**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

In re

Towanda L. Tompkins,                                   Case No. 26-30943-KLP
                                                       Chapter 7
    Debtor.

**UNITED STATES TRUSTEE'S OBJECTION TO 1) MOTION TO
CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13 AND 2) MOTION TO
DISMISS CASE AND ALTERNATIVE TO CONVERT TO CHAPTER 11**

Matthew W. Cheney, Acting United States Trustee for Region 4 ("the U.S. Trustee"), by

and through undersigned counsel, hereby files this Objection to the Debtor's Motion to Convert

Case to Chapter 13 (Docket No. 25) and the Debtor's subsequent Motion to Dismiss Case or

Convert Case to Chapter 11 (Docket No. 30) (collectively, the "Motions"). In support of this

Objection, the U.S. Trustee states as follows:

**Background**

1.      Towanda L. Tompkins ("the Debtor") filed a voluntary chapter 7 case on March

10, 2026. Docket No. 1.

2.      The Debtor is not represented by counsel. *Id*. at 9.

3.      In Question 5 of the Petition, the Debtor listed her address as 5024 Cedar Acres Ct.,

Richmond, VA 23223. *Id*. at 2.

4.      In Question 12 of the Petition, when asked whether the Debtor was sole proprietor

of any business, the Debtor answered "Yes" and disclosed that she is the sole proprietor of

Tompkins Transportation LLC. *Id*. at 4.

5.      In Schedule A/B: Your Property, the Debtor reported that she owns the property

Kathryn R. Montgomery (Va. Bar No. 42380)
Katharine Toledo (D.C. Bar No. 90027591)
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (202) 603-5203

located at 5024 Cedar Acres Ct., Richmond, VA 23223 ("the Cedar Acres property"). *Id*. at 10.

6. In Schedule E/F: Creditors Who Have Unsecured Claims, among other debts, the Debtor scheduled the following debts:

a. $20,000.00 owed to Cardiff, incurred September 1, 2025

b. $27,000.00 owed to Fundex NYC LLC, incurred January 1, 2026

c. $24,000.00 owed to Credibly, incurred September 1, 2025

d. $35,500.00 owed to Loot, incurred September 2, 2025

e. $13,500.00 owed to BHB Funding, incurred October 1, 2025

*Id*. at 25-27.

7. In Schedule I: Your Income, the Debtor reported that she is a Dispatcher for Tompkins Transportation, that she earns monthly gross wages of $5,000.00 per month, and that her monthly take home pay is $4,152.00. *Id*. at 37-38.

8. In Schedule J: Your Expenses, the Debtor scheduled monthly expenses of $5,249.00 and reported that she has a monthly net income of - $1,097.00. *Id*. at 41.

9. In Question 18 of the Statement of Financial Affairs, the Debtor disclosed that on August 1, 2025, she transferred the Cedar Acres property to her son, Kevanta Tompkins. *Id*. at 52.

10. The Debtor valued the Cedar Acres property at $385,000. *Id*.

11. In Question 18 of the Statement of Financial Affairs, the Debtor also reported that on August 1, 2025, she transferred five company vehicles to her son, Kevanta Tompkins, which she valued at $1,000. *Id*.

12. Jennifer West was appointed the interim chapter 7 trustee ("the chapter 7 Trustee") on March 11, 2026. *See* Docket No. 7.

13. On March 17, 2026, the Debtor filed the Official Form 106Sum: Summary of Your

2

Assets and Liabilities, which showed that the Debtor has a total of $1,063,000.00 in debt, including $327,000.00 in secured debts, $133,000.00 in priority unsecured debts, and $603,000.00 in nonpriority unsecured debts. *See* Docket No. 17.

14.     The 341 Meeting was held on April 14, 2026, and the Debtor was questioned by the chapter 7 Trustee and counsel for the U.S. Trustee.

15.     At the 341 Meeting, the Debtor gave the following testimony:

a.   The Debtor transferred the Cedar Acres property to her son for no consideration due to the fact that she was unable to pay the mortgage.

b.   The balance on the mortgage for the Cedar Acres property is approximately $92,000.00.

c.   The Cedar Acres property is valued in excess of $300,000.00.

d.   The Debtor also transferred two other properties to her son in August 2025: 2162 Elkridge Lane[1] ("the Elkridge Lane property") and 115 Plum Lane[2] ("the Plum Lane property"). Both properties were also transferred for no consideration.

e.   The Debtor failed to disclose the transfers of the Elkridge Lane property and the Plum Lane property on her bankruptcy papers because she "didn't see where it needed to be listed" and because she believed she only needed to disclose the Cedar Acres property because she resides in that property.

f.   Neither the Elkridge Lane property nor the Plum Lane property were encumbered by mortgages or liens.

g.   The Debtor effectuated the property transfers to her son because she was experiencing medical issues so "he [the Debtor's son] would not have to go through

---

[1] Located in Richmond, VA, ZIP code 23223.
[2] Located in Saint Stephens Church, VA, ZIP code 23148.

so much."

h. The Debtor was unaware of the chapter 7 Trustee's avoidance powers and the fact that all three transfers of real property to the Debtor's son could be avoided for purposes of liquidation and payment of her creditors.

i. The Debtor testified that her uncle resides in the Plum Lane property.

j. The Debtor expressed an interest in pursuing a chapter 13 case.

k. Although Tompkins Transportation earned gross income of around $400,000 in 2025, the business did not make a profit in 2025.

l. Tompkins Transportation has "always been in the negative".

m. Although the Debtor's Statement of Financial Affairs referenced the transfer of five company vehicles to her son, none of these vehicles were actually transferred and all are still in the Debtor's name.

n. The business-related loans incurred between September 1, 2025 and January 1, 2026 were intended to be used for vehicle maintenance, for taxes, and for the Debtor's intended expansion of Tompkins Transportation.

o. All of the recent business-related loans were deposited into Tompkins Transportation's United Bank checking account ending in -6108.

p. The Debtor made no payments to the IRS or the Virginia Department of Taxation within 6 months of the April 14 341 date.

q. As of the end of March, there was approximately $100.00 in Tompkins Transportation's United Bank account ending in -6108.

16. The 341 Meeting was continued to May 5, 2026. Docket No. 21.

17. On April 20, 2026, the Debtor filed a Motion to Convert Case to Chapter 13 ("the

Debtor's Motion to Convert to Chapter 13"). Docket No. 25.

18. On April 28, 2026, the chapter 7 Trustee filed her Objection to Motion to Convert Case from Chapter 7 to Chapter 13. Docket No. 29.

19. On April 29, 2026, the Debtor filed her Motion to Voluntarily Dismiss Case & Alternative To Convert to Chapter 11 ("the Debtor's Motion to Dismiss or Convert to Chapter 11"). Docket No. 30.

## Argument

20. Under Section 706(a), "the Debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title…". 11 U.S.C. § 706(a).

21. "The Debtor bears the initial burden of making a *prima facie* case for conversion by demonstrating that there has been no prior conversion of the case, that the Debtor is eligible for relief under 11 U.S.C. § 109, and that conversion is to achieve a purpose permitted under the proposed chapter." *In re Bradley*, 649 B.R. 693, 701 (Bankr. D.S.C. 2023), citing *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007).

I. **The Debtor's Motion to Convert to Chapter 13 should be denied because the Debtor is ineligible to proceed under chapter 13 of the Bankruptcy Code.**

22. A chapter 7 case may be converted to chapter 13 only if the Debtor is eligible to proceed under chapter 13. 11 U.S.C. § 706(d) ("a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.")

23. Under Section 109(e), a debtor is eligible to proceed under chapter 13 of the Bankruptcy Code only if a) the debtor has regular income; b) the debtor owes noncontingent, liquidated, unsecured debts of less than $526,700.00, and c) the debtor owes noncontingent, liquidated, secured debts of less than $1,580,125.00. 11 U.S.C. § 109(e).

24. In this case, the Debtor is ineligible to proceed under chapter 13 because the total

5

of her noncontingent, liquidated, unsecured debts is approximately $661,600.00, which is greater than Section 109(e)'s statutory cap of $526,700.00. Accordingly, the Debtor has failed to demonstrate that she is eligible for relief under Section 109. Because the Debtor is ineligible to proceed under chapter 13, her Motion to Convert to Chapter 13 should be denied.

**II.     The Debtor's Motion to Convert to Chapter 13 should be denied because the Debtor acted in bad faith both prior to and during her chapter 7 case.**

25.     Even if a Debtor proves their eligibility to proceed under chapter 13, this Court may still deny conversion to chapter 13 where the Debtor has "engaged in bad faith conduct, prepetition or during the pendency of her chapter 7 case, that would establish cause in a chapter 13 case for dismissal or reconversion to chapter 7." *In re Thomas*, No. 24-20266, 2025 Bankr. LEXIS 1608 (Bankr. S.D. Ga. July 1, 2025), at *8, citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373-74 (2007).

26.     "*Marrama*… made clear that 'a chapter 7 debtor forfeits the right to convert to chapter 13 if he or she has engaged in bad faith conduct.'" *In re Eubanks*, 672 B.R. 861, 872 (Bankr. D.S.C. 2025), quoting *In re Autry*, No. 24-50215, 2024 Bankr. LEXIS 2123 (Bankr. M.D.N.C. Aug. 15, 2024), at *3; *see also In re McGhee*, 672 B.R. 278, 290 (Bankr. D.S.C. 2025) ("a debtor may not be entitled to convert her case to Chapter 13 under § 706(a) 'if the debtor… has engaged in bad faith conduct—prepetition or during the pendency of the Chapter 7 case— sufficient to constitute 'cause' that would ultimately warrant dismissal or reconversion of the Chapter 13 case under § 1307(c).'")

27.     "Numerous decisions… have found that a debtor's concealment of assets and transfers can constitute bad faith sufficient to deny conversion." *Autry*, 2025 Bankr. LEXIS 1608, at *7 (collecting cases).

28.     In this case, the Debtor concealed the transfers of the Elkridge Lane property and

6

the Plum Lane property to her son in August 2025 by failing to disclose them on her bankruptcy papers—despite disclosing the transfer of the Cedar Acres property on the bankruptcy papers. Further, in light of the Debtor's testimony that she was not aware of the chapter 7 Trustee's avoidance powers with respect to the three properties she transferred, it appears that the Debtor transferred all three properties a mere seven months before filing for bankruptcy in an effort to remove them from the reach of her creditors, while maintaining possession or control over at least two of the properties (the Cedar Acres property, in which she personally resides, and the Plum Lane, on which the Debtor's uncle resides according to her 341 Testimony). In light of the debtor's prepetition bad faith in transferring all three properties to her son for no consideration, and the postpetition bad faith in her failures to adequately disclose these transfers in her bankruptcy papers, the Debtor's Motion to Convert to chapter 13 should be denied.

**III.    The Debtor's Motion to Dismiss or Convert to Chapter 11 should also be denied.**

29.    "*Marrama* is also applicable where the debtor seeks to convert to Chapter 11, because 11 U.S.C. § 1112(b) serves a similar purpose to that of 11 U.S.C. § 1307(c)." *In re Wetter*, 620 B.R. 243, 250 (Bankr. W.D. Va. 2020); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007) ("While the issue in *Marrama* was conversion from chapter 7 to 13, the governing statute, § 706, applies equally to conversions from chapter 7 to 11."); *In re Keffer*, 628 B.R. 897, 902 (Bankr. S.D.W.V. 2021); *In re Hunter*, 597 B.R. 287, 292 (Bankr. N.D.N.C. 2019); "*In re Irmen*, No. 07-B-03103, 2008 Bankr. LEXIS 329 (Bankr. N.D. Ill. Feb. 1, 2008), at *8 ("It would be absurd to allow a debtor the absolute right to convert to Chapter 11 under § 706(a) only to have that case immediate dismissed pursuant to 11 U.S.C. § 1112(b)(1).")

30.    "[A] Chapter 7 debtor seeking to convert to Chapter 11 must be eligible to be a debtor under that chapter and not subject to conversion or dismissal for cause as set forth in §

7

1112(b), including but not limited to bad faith." *Hunter*, 597 B.R. at 292.

31.    Among other reasons, a case may be subject to conversion or dismissal under Section 1112(b) for a) substantial or continuing loss to the estate and b) the absence of a reasonable likelihood of reorganization. *See* 11 U.S.C. § 1112(b)(4)(A). The first prong—that there is substantial or continuing loss to the estate—is satisfied where there is a showing that "the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief." *In re Dobson*, No. 23-60148, 2023 Bankr. LEXIS 2499 (Bankr. W.D. Va. Sept. 29, 2023), at *7. The second prong—the absence of a reasonable likelihood of reorganization—is satisfied where "a debtor is unable to propose a confirmable chapter 11 plan." *Id.*, citing *In re Hao*, 644 B.R. 339, 347 (Bankr. E.D. Va. 2022). Where conversion to chapter 11 "would accomplish nothing more than a liquidation of the estate's assets but would impose additional costs and delay on creditors", bankruptcy courts generally disfavor conversion to chapter 11. *See, e.g., In re Hunter*, 597 B.R. 287, 294 (Bankr. N.D.N.C. 2019), citing *In re Woodruff*, 580 B.R. 291, 300 (Bankr. M.D. Ga. 2018).

32.    Based on the Debtor's Schedules and her testimony at the 341 Meeting, this case would be subject to re-conversion to chapter 7 or dismissal under Section 1112(b)(4)(A) due to continuing loss to the estate and the absence of a reasonable likelihood of reorganization. First, there is continuing loss to the estate in light of the fact that the Debtor's Schedule I and J reflect negative disposable income of - $1,097.00. The Debtor also testified at the 341 Meeting that Tompkins Transportation has "always been in the negative", indicating that the Debtor does not receive additional funds from Tompkins Transportation beyond her regular wages. Second, in light of the Debtor's negative disposable income per Schedules I and J and testimony that Tompkins Transportation has never made a profit, it is not reasonably likely that the Debtor would be able to

reorganize in chapter 11 using her income alone. Thus, any confirmable Plan would almost necessarily entail the same result that the Debtor is seeking to avoid through conversion—the sale of one or more of her properties. Were the Debtor to convert to chapter 11, the outcome would likely be the same as in a chapter 7 case—the sale of one or more of her properties—meanwhile the Debtor would accumulate additional administrative expenses while in chapter 11, such as U.S. Trustee quarterly fees or subchapter V Trustee fees.

33.    Thus, were the Debtor to convert this case to chapter 11, this case would nevertheless be ripe for dismissal or conversion under Section 1112(b)(4)(A). Accordingly, the Debtor's Motion to Convert to Chapter 11 should be denied.

34.    Further, as discussed above, there are elements of both prepetition bad faith in the Debtor's transfers of three properties to her son for no consideration, and postpetition bad faith in the Debtor's failures to disclose two of the transfers in her bankruptcy papers. The transfers and incomplete disclosure thereof constitute cause to deny the Debtor's motion to convert to chapter 11, as the Debtor transferred her properties in an effort to remove them from the reach of her creditors, and seeks conversion now for the purpose of preventing the trustee's avoidance of the transfers and sales of the properties. The U.S. Trustee also questions the disposition of the funds borrowed by Tompkins Transportation within a year of the bankruptcy, especially where the Debtor testified that funds had been borrowed in part for the purpose of paying tax debts, but that no payments had been made to taxing authorities, and virtually all of the funds have been exhausted.

35.    The existence of both prepetition and postpetition indicia of bad faith provides further bases upon which the Debtor's Motion to Convert to Chapter 11 should be denied.

36.    Finally, "Chapter 7 debtors do not have an absolute right to voluntarily dismiss their

case." *In re Elmore*, 668 B.R. 112, 130 (Bankr. D.S.C. 2025), citing *In re Wood*, No. 16-06515-DD, 2017 Bankr. LEXIS 1130 (Bankr. D.S.C. Apr. 21, 2017), at *2; *see also Eubanks*, 672 B.R. at 872; *Cilwa v. Fort*, No. 7:17-vs-00450, 2018 U.S. Dist. LEXIS 22687 (D.S.C. Jan. 26, 2018), at *6.

37.    "To voluntarily dismiss a case, a debtor must make a showing of cause and demonstrate why a dismissal is justified. A Chapter 7 debtor has no absolute right to dismissal of his or her case, and the motion should be denied if the dismissal would result in prejudice to the creditors." *In re France*, No. 20-03044-DD, 2021 Bankr. LEXIS 3238 (Bankr. D.S.C. Nov. 23, 2021), at *3, quoting *In re Wood*, No. 16-06515, 2017 Bankr. LEXIS 1130 (Bankr. D.S.C. Apr. 21, 2017), at *6; *see also Elmore*, 668 B.R. at 130 (comparing Section 1307(b) to Section 707(a), which permits dismissal of a chapter 7 case only after notice and a hearing and for cause.)

38.    "The debtor bears the burden of showing that cause exists to dismiss the case." *Elmore*, 668 B.R. at 130. In determining whether there is sufficient cause to dismiss a case, courts in the Fourth Circuit consider four factors: a) "whether dismissal is in the best interest of the debtor"; b) "whether dismissal is in the best interest of the creditors"; c) "whether dismissal would result in an abuse or manipulation of the system"; and d) "whether dismissal is justified by compelling equitable principles." *France*, 2021 Bankr. LEXIS 3238, at *3-4, citing *Wood*, 2017 Bankr. LEXIS 1130 at *2 and *In re Hopper*, 404 B.R. 302, 308 (Bankr. N.D. Ill. 2009).

39.    In this case, all four of these factors likely weigh against dismissal of the case.

a.    First, dismissal of this case is not in the best interest of the Debtor, who filed this case to discharge nearly $700,000.00 in unsecured debt. If this case is dismissed, the Debtor will not be discharged from her debts. *See, e.g., Wood*, 2017 Bankr. LEXIS 1130, at *10. Accordingly, dismissal is likely not in the best interest of the

10

Debtor.

b.  Second, dismissal of this case is not in the best interest of the Debtor's creditors for two reasons. First, the Debtor does not have the ability to pay her creditors outside of the bankruptcy case due to her negative disposable income, and has expressed that she did not intend to sell any of her real property—and seeks conversion or dismissal of her case to avoid doing so. Second, Creditors' ability to collect on their debts has been significantly complicated by the Debtor's transfer of the three parcels of real property to her son. Without the chapter 7 bankruptcy case, the Debtor's creditors would have to resort to costly and time-consuming state court litigation to protect their interests. If this case remains in chapter 7, however, the chapter 7 Trustee's avoidance powers empower her to both avoid these transfers and sell the properties, which has the potential to result in significant return to the Debtor's creditors.

c.  Third, and as described above, dismissal would result in manipulation of the bankruptcy system, where creditor's recovery would be significantly complicated by the Debtor's prepetition transfers of the three parcels of real property. In addition, were the Debtor to dismiss the above-captioned case and then file a subsequent bankruptcy case after the end of the one-year preference period, subsequent chapter 7 trustees would be unable to avoid the transfers, which would have a direct effect on the recovery available to the Debtor's creditors.

d.  Finally, there are no compelling equitable principles justifying dismissal. *See Wood*, 2017 Bankr. LEXIS 1130, at *8-9 ("It is true that there are cases in which courts have granted a chapter 7 debtor's motion to dismiss based in part on a

11

mistake of fact. However, in these cases, another element is also present which, taken together with the mistake of fact, constitutes cause for dismissal.") (collecting cases).

40.    Accordingly, this Court should deny the Debtor's Motion to Dismiss this case.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order a) denying the Debtor's Motion to Convert to Chapter 13; b) denying the Debtor's Motion to Dismiss or Convert to Chapter 11; and c) for such other and further relief as is proper.

MATTHEW W. CHENEY
Acting United States Trustee
Region 4

Date: <u>May 7, 2026</u>                    By: <u>*/s/ Katharine I. Toledo*</u>
Katharine I. Toledo
Trial Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2026, a true copy of the foregoing was served via electronic mail pursuant to the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia to all parties registered for electronic notices, including, (i) Jennifer J. West, Trustee.  In addition, a copy was mailed to the following:

Towanda Lynette Tompkins
5024 Cedar Acres Ct
Richmond, VA 23223          <u>*/s/ Katharine I. Toledo*</u>
Katharine I. Toledo
Trial Attorney
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (202) 603-5203

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

In re

Towanda L. Tompkins,                                    Case No. 26-30943-KLP
                                                        Chapter 7
    Debtor.

**UNITED STATES TRUSTEE'S OBJECTION TO 1) MOTION TO
CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13 AND 2) MOTION TO
DISMISS CASE AND ALTERNATIVE TO CONVERT TO CHAPTER 11**

Matthew W. Cheney, Acting United States Trustee for Region 4 ("the U.S. Trustee"), by and through undersigned counsel, hereby files this Objection to the Debtor's Motion to Convert Case to Chapter 13 (Docket No. 25) and the Debtor's subsequent Motion to Dismiss Case or Convert Case to Chapter 11 (Docket No. 30) (collectively, the "Motions"). In support of this Objection, the U.S. Trustee states as follows:

**Background**

1.      Towanda L. Tompkins ("the Debtor") filed a voluntary chapter 7 case on March 10, 2026. Docket No. 1.

2.      The Debtor is not represented by counsel. *Id*. at 9.

3.      In Question 5 of the Petition, the Debtor listed her address as 5024 Cedar Acres Ct., Richmond, VA 23223. *Id*. at 2.

4.      In Question 12 of the Petition, when asked whether the Debtor was sole proprietor of any business, the Debtor answered "Yes" and disclosed that she is the sole proprietor of Tompkins Transportation LLC. *Id*. at 4.

5.      In Schedule A/B: Your Property, the Debtor reported that she owns the property

Kathryn R. Montgomery (Va. Bar No. 42380)
Katharine Toledo (D.C. Bar No. 90027591)
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (202) 603-5203

located at 5024 Cedar Acres Ct., Richmond, VA 23223 ("the Cedar Acres property"). *Id*. at 10.

6.      In Schedule E/F: Creditors Who Have Unsecured Claims, among other debts, the Debtor scheduled the following debts:

a.  $20,000.00 owed to Cardiff, incurred September 1, 2025

b.  $27,000.00 owed to Fundex NYC LLC, incurred January 1, 2026

c.  $24,000.00 owed to Credibly, incurred September 1, 2025

d.  $35,500.00 owed to Loot, incurred September 2, 2025

e.  $13,500.00 owed to BHB Funding, incurred October 1, 2025

*Id*. at 25-27.

7.      In Schedule I: Your Income, the Debtor reported that she is a Dispatcher for Tompkins Transportation, that she earns monthly gross wages of $5,000.00 per month, and that her monthly take home pay is $4,152.00. *Id*. at 37-38.

8.      In Schedule J: Your Expenses, the Debtor scheduled monthly expenses of $5,249.00 and reported that she has a monthly net income of - $1,097.00. *Id*. at 41.

9.      In Question 18 of the Statement of Financial Affairs, the Debtor disclosed that on August 1, 2025, she transferred the Cedar Acres property to her son, Kevanta Tompkins. *Id*. at 52.

10.      The Debtor valued the Cedar Acres property at $385,000. *Id*.

11.      In Question 18 of the Statement of Financial Affairs, the Debtor also reported that on August 1, 2025, she transferred five company vehicles to her son, Kevanta Tompkins, which she valued at $1,000. *Id*.

12.      Jennifer West was appointed the interim chapter 7 trustee ("the chapter 7 Trustee") on March 11, 2026. *See* Docket No. 7.

13.      On March 17, 2026, the Debtor filed the Official Form 106Sum: Summary of Your

2

Assets and Liabilities, which showed that the Debtor has a total of $1,063,000.00 in debt, including $327,000.00 in secured debts, $133,000.00 in priority unsecured debts, and $603,000.00 in nonpriority unsecured debts. *See* Docket No. 17.

14.     The 341 Meeting was held on April 14, 2026, and the Debtor was questioned by the chapter 7 Trustee and counsel for the U.S. Trustee.

15.     At the 341 Meeting, the Debtor gave the following testimony:

a.   The Debtor transferred the Cedar Acres property to her son for no consideration due to the fact that she was unable to pay the mortgage.

b.   The balance on the mortgage for the Cedar Acres property is approximately $92,000.00.

c.   The Cedar Acres property is valued in excess of $300,000.00.

d.   The Debtor also transferred two other properties to her son in August 2025: 2162 Elkridge Lane[1] ("the Elkridge Lane property") and 115 Plum Lane[2] ("the Plum Lane property"). Both properties were also transferred for no consideration.

e.   The Debtor failed to disclose the transfers of the Elkridge Lane property and the Plum Lane property on her bankruptcy papers because she "didn't see where it needed to be listed" and because she believed she only needed to disclose the Cedar Acres property because she resides in that property.

f.   Neither the Elkridge Lane property nor the Plum Lane property were encumbered by mortgages or liens.

g.   The Debtor effectuated the property transfers to her son because she was experiencing medical issues so "he [the Debtor's son] would not have to go through

---

[1] Located in Richmond, VA, ZIP code 23223.
[2] Located in Saint Stephens Church, VA, ZIP code 23148.

3

so much."

h.  The Debtor was unaware of the chapter 7 Trustee's avoidance powers and the fact that all three transfers of real property to the Debtor's son could be avoided for purposes of liquidation and payment of her creditors.

i.  The Debtor testified that her uncle resides in the Plum Lane property.

j.  The Debtor expressed an interest in pursuing a chapter 13 case.

k.  Although Tompkins Transportation earned gross income of around $400,000 in 2025, the business did not make a profit in 2025.

l.  Tompkins Transportation has "always been in the negative".

m.  Although the Debtor's Statement of Financial Affairs referenced the transfer of five company vehicles to her son, none of these vehicles were actually transferred and all are still in the Debtor's name.

n.  The business-related loans incurred between September 1, 2025 and January 1, 2026 were intended to be used for vehicle maintenance, for taxes, and for the Debtor's intended expansion of Tompkins Transportation.

o.  All of the recent business-related loans were deposited into Tompkins Transportation's United Bank checking account ending in -6108.

p.  The Debtor made no payments to the IRS or the Virginia Department of Taxation within 6 months of the April 14 341 date.

q.  As of the end of March, there was approximately $100.00 in Tompkins Transportation's United Bank account ending in -6108.

16.  The 341 Meeting was continued to May 5, 2026. Docket No. 21.

17.  On April 20, 2026, the Debtor filed a Motion to Convert Case to Chapter 13 ("the

4

Debtor's Motion to Convert to Chapter 13"). Docket No. 25.

18.    On April 28, 2026, the chapter 7 Trustee filed her Objection to Motion to Convert Case from Chapter 7 to Chapter 13. Docket No. 29.

19.    On April 29, 2026, the Debtor filed her Motion to Voluntarily Dismiss Case & Alternative To Convert to Chapter 11 ("the Debtor's Motion to Dismiss or Convert to Chapter 11"). Docket No. 30.

### Argument

20.    Under Section 706(a), "the Debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title…". 11 U.S.C. § 706(a).

21.    "The Debtor bears the initial burden of making a *prima facie* case for conversion by demonstrating that there has been no prior conversion of the case, that the Debtor is eligible for relief under 11 U.S.C. § 109, and that conversion is to achieve a purpose permitted under the proposed chapter." *In re Bradley*, 649 B.R. 693, 701 (Bankr. D.S.C. 2023), citing *In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007).

I.    **The Debtor's Motion to Convert to Chapter 13 should be denied because the Debtor is ineligible to proceed under chapter 13 of the Bankruptcy Code.**

22.    A chapter 7 case may be converted to chapter 13 only if the Debtor is eligible to proceed under chapter 13. 11 U.S.C. § 706(d) ("a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.")

23.    Under Section 109(e), a debtor is eligible to proceed under chapter 13 of the Bankruptcy Code only if a) the debtor has regular income; b) the debtor owes noncontingent, liquidated, unsecured debts of less than $526,700.00, and c) the debtor owes noncontingent, liquidated, secured debts of less than $1,580,125.00. 11 U.S.C. § 109(e).

24.    In this case, the Debtor is ineligible to proceed under chapter 13 because the total

5

of her noncontingent, liquidated, unsecured debts is approximately $661,600.00, which is greater than Section 109(e)'s statutory cap of $526,700.00.   Accordingly, the Debtor has failed to demonstrate that she is eligible for relief under Section 109. Because the Debtor is ineligible to proceed under chapter 13, her Motion to Convert to Chapter 13 should be denied.

**II.      The Debtor's Motion to Convert to Chapter 13 should be denied because the Debtor acted in bad faith both prior to and during her chapter 7 case.**

25.      Even if a Debtor proves their eligibility to proceed under chapter 13, this Court may still deny conversion to chapter 13 where the Debtor has "engaged in bad faith conduct, prepetition or during the pendency of her chapter 7 case, that would establish cause in a chapter 13 case for dismissal or reconversion to chapter 7." *In re Thomas*, No. 24-20266, 2025 Bankr. LEXIS 1608 (Bankr. S.D. Ga. July 1, 2025), at *8, citing *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 373-74 (2007).

26.      "*Marrama*… made clear that 'a chapter 7 debtor forfeits the right to convert to chapter 13 if he or she has engaged in bad faith conduct.'" *In re Eubanks*, 672 B.R. 861, 872 (Bankr. D.S.C. 2025), quoting *In re Autry*, No. 24-50215, 2024 Bankr. LEXIS 2123 (Bankr. M.D.N.C. Aug. 15, 2024), at *3; *see also In re McGhee*, 672 B.R. 278, 290 (Bankr. D.S.C. 2025) ("a debtor may not be entitled to convert her case to Chapter 13 under § 706(a) 'if the debtor… has engaged in bad faith conduct—prepetition or during the pendency of the Chapter 7 case— sufficient to constitute 'cause' that would ultimately warrant dismissal or reconversion of the Chapter 13 case under § 1307(c).'")

27.      "Numerous decisions… have found that a debtor's concealment of assets and transfers can constitute bad faith sufficient to deny conversion." *Autry*, 2025 Bankr. LEXIS 1608, at *7 (collecting cases).

28.      In this case, the Debtor concealed the transfers of the Elkridge Lane property and

6

the Plum Lane property to her son in August 2025 by failing to disclose them on her bankruptcy papers—despite disclosing the transfer of the Cedar Acres property on the bankruptcy papers. Further, in light of the Debtor's testimony that she was not aware of the chapter 7 Trustee's avoidance powers with respect to the three properties she transferred, it appears that the Debtor transferred all three properties a mere seven months before filing for bankruptcy in an effort to remove them from the reach of her creditors, while maintaining possession or control over at least two of the properties (the Cedar Acres property, in which she personally resides, and the Plum Lane, on which the Debtor's uncle resides according to her 341 Testimony). In light of the debtor's prepetition bad faith in transferring all three properties to her son for no consideration, and the postpetition bad faith in her failures to adequately disclose these transfers in her bankruptcy papers, the Debtor's Motion to Convert to chapter 13 should be denied.

**III.     The Debtor's Motion to Dismiss or Convert to Chapter 11 should also be denied.**

29.     "*Marrama* is also applicable where the debtor seeks to convert to Chapter 11, because 11 U.S.C. § 1112(b) serves a similar purpose to that of 11 U.S.C. § 1307(c)." *In re Wetter*, 620 B.R. 243, 250 (Bankr. W.D. Va. 2020); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 757 (Bankr. D.S.C. 2007) ("While the issue in *Marrama* was conversion from chapter 7 to 13, the governing statute, § 706, applies equally to conversions from chapter 7 to 11."); *In re Keffer*, 628 B.R. 897, 902 (Bankr. S.D.W.V. 2021); *In re Hunter*, 597 B.R. 287, 292 (Bankr. N.D.N.C. 2019); "*In re Irmen*, No. 07-B-03103, 2008 Bankr. LEXIS 329 (Bankr. N.D. Ill. Feb. 1, 2008), at *8 ("It would be absurd to allow a debtor the absolute right to convert to Chapter 11 under § 706(a) only to have that case immediate dismissed pursuant to 11 U.S.C. § 1112(b)(1).")

30.     "[A] Chapter 7 debtor seeking to convert to Chapter 11 must be eligible to be a debtor under that chapter and not subject to conversion or dismissal for cause as set forth in §

7

1112(b), including but not limited to bad faith." *Hunter*, 597 B.R. at 292.

31.     Among other reasons, a case may be subject to conversion or dismissal under Section 1112(b) for a) substantial or continuing loss to the estate and b) the absence of a reasonable likelihood of reorganization. *See* 11 U.S.C. § 1112(b)(4)(A). The first prong—that there is substantial or continuing loss to the estate—is satisfied where there is a showing that "the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief." *In re Dobson*, No. 23-60148, 2023 Bankr. LEXIS 2499 (Bankr. W.D. Va. Sept. 29, 2023), at *7. The second prong—the absence of a reasonable likelihood of reorganization—is satisfied where "a debtor is unable to propose a confirmable chapter 11 plan." *Id*., citing *In re Hao*, 644 B.R. 339, 347 (Bankr. E.D. Va. 2022). Where conversion to chapter 11 "would accomplish nothing more than a liquidation of the estate's assets but would impose additional costs and delay on creditors", bankruptcy courts generally disfavor conversion to chapter 11. *See, e.g., In re Hunter*, 597 B.R. 287, 294 (Bankr. N.D.N.C. 2019), citing *In re Woodruff*, 580 B.R. 291, 300 (Bankr. M.D. Ga. 2018).

32.     Based on the Debtor's Schedules and her testimony at the 341 Meeting, this case would be subject to re-conversion to chapter 7 or dismissal under Section 1112(b)(4)(A) due to continuing loss to the estate and the absence of a reasonable likelihood of reorganization. First, there is continuing loss to the estate in light of the fact that the Debtor's Schedule I and J reflect negative disposable income of - $1,097.00. The Debtor also testified at the 341 Meeting that Tompkins Transportation has "always been in the negative", indicating that the Debtor does not receive additional funds from Tompkins Transportation beyond her regular wages. Second, in light of the Debtor's negative disposable income per Schedules I and J and testimony that Tompkins Transportation has never made a profit, it is not reasonably likely that the Debtor would be able to

8

reorganize in chapter 11 using her income alone. Thus, any confirmable Plan would almost necessarily entail the same result that the Debtor is seeking to avoid through conversion—the sale of one or more of her properties. Were the Debtor to convert to chapter 11, the outcome would likely be the same as in a chapter 7 case—the sale of one or more of her properties—meanwhile the Debtor would accumulate additional administrative expenses while in chapter 11, such as U.S. Trustee quarterly fees or subchapter V Trustee fees.

33. Thus, were the Debtor to convert this case to chapter 11, this case would nevertheless be ripe for dismissal or conversion under Section 1112(b)(4)(A). Accordingly, the Debtor's Motion to Convert to Chapter 11 should be denied.

34. Further, as discussed above, there are elements of both prepetition bad faith in the Debtor's transfers of three properties to her son for no consideration, and postpetition bad faith in the Debtor's failures to disclose two of the transfers in her bankruptcy papers. The transfers and incomplete disclosure thereof constitute cause to deny the Debtor's motion to convert to chapter 11, as the Debtor transferred her properties in an effort to remove them from the reach of her creditors, and seeks conversion now for the purpose of preventing the trustee's avoidance of the transfers and sales of the properties. The U.S. Trustee also questions the disposition of the funds borrowed by Tompkins Transportation within a year of the bankruptcy, especially where the Debtor testified that funds had been borrowed in part for the purpose of paying tax debts, but that no payments had been made to taxing authorities, and virtually all of the funds have been exhausted.

35. The existence of both prepetition and postpetition indicia of bad faith provides further bases upon which the Debtor's Motion to Convert to Chapter 11 should be denied.

36. Finally, "Chapter 7 debtors do not have an absolute right to voluntarily dismiss their

9

case." *In re Elmore*, 668 B.R. 112, 130 (Bankr. D.S.C. 2025), citing *In re Wood*, No. 16-06515-DD, 2017 Bankr. LEXIS 1130 (Bankr. D.S.C. Apr. 21, 2017), at *2; *see also Eubanks*, 672 B.R. at 872; *Cilwa v. Fort*, No. 7:17-vs-00450, 2018 U.S. Dist. LEXIS 22687 (D.S.C. Jan. 26, 2018), at *6.

37.    "To voluntarily dismiss a case, a debtor must make a showing of cause and demonstrate why a dismissal is justified. A Chapter 7 debtor has no absolute right to dismissal of his or her case, and the motion should be denied if the dismissal would result in prejudice to the creditors." *In re France*, No. 20-03044-DD, 2021 Bankr. LEXIS 3238 (Bankr. D.S.C. Nov. 23, 2021), at *3, quoting *In re Wood*, No. 16-06515, 2017 Bankr. LEXIS 1130 (Bankr. D.S.C. Apr. 21, 2017), at *6; *see also Elmore*, 668 B.R. at 130 (comparing Section 1307(b) to Section 707(a), which permits dismissal of a chapter 7 case only after notice and a hearing and for cause.)

38.    "The debtor bears the burden of showing that cause exists to dismiss the case." *Elmore*, 668 B.R. at 130. In determining whether there is sufficient cause to dismiss a case, courts in the Fourth Circuit consider four factors: a) "whether dismissal is in the best interest of the debtor"; b) "whether dismissal is in the best interest of the creditors"; c) "whether dismissal would result in an abuse or manipulation of the system"; and d) "whether dismissal is justified by compelling equitable principles." *France*, 2021 Bankr. LEXIS 3238, at *3-4, citing *Wood*, 2017 Bankr. LEXIS 1130 at *2 and *In re Hopper*, 404 B.R. 302, 308 (Bankr. N.D. Ill. 2009).

39.    In this case, all four of these factors likely weigh against dismissal of the case.

a.    First, dismissal of this case is not in the best interest of the Debtor, who filed this case to discharge nearly $700,000.00 in unsecured debt. If this case is dismissed, the Debtor will not be discharged from her debts. *See, e.g., Wood*, 2017 Bankr. LEXIS 1130, at *10. Accordingly, dismissal is likely not in the best interest of the

10

Debtor.

b. Second, dismissal of this case is not in the best interest of the Debtor's creditors for two reasons. First, the Debtor does not have the ability to pay her creditors outside of the bankruptcy case due to her negative disposable income, and has expressed that she did not intend to sell any of her real property—and seeks conversion or dismissal of her case to avoid doing so. Second, Creditors' ability to collect on their debts has been significantly complicated by the Debtor's transfer of the three parcels of real property to her son. Without the chapter 7 bankruptcy case, the Debtor's creditors would have to resort to costly and time-consuming state court litigation to protect their interests. If this case remains in chapter 7, however, the chapter 7 Trustee's avoidance powers empower her to both avoid these transfers and sell the properties, which has the potential to result in significant return to the Debtor's creditors.

c. Third, and as described above, dismissal would result in manipulation of the bankruptcy system, where creditor's recovery would be significantly complicated by the Debtor's prepetition transfers of the three parcels of real property. In addition, were the Debtor to dismiss the above-captioned case and then file a subsequent bankruptcy case after the end of the one-year preference period, subsequent chapter 7 trustees would be unable to avoid the transfers, which would have a direct effect on the recovery available to the Debtor's creditors.

d. Finally, there are no compelling equitable principles justifying dismissal. *See Wood*, 2017 Bankr. LEXIS 1130, at *8-9 ("It is true that there are cases in which courts have granted a chapter 7 debtor's motion to dismiss based in part on a

11

mistake of fact. However, in these cases, another element is also present which, taken together with the mistake of fact, constitutes cause for dismissal.") (collecting cases).

40.     Accordingly, this Court should deny the Debtor's Motion to Dismiss this case.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order a) denying the Debtor's Motion to Convert to Chapter 13; b) denying the Debtor's Motion to Dismiss or Convert to Chapter 11; and c) for such other and further relief as is proper.

MATTHEW W. CHENEY
Acting United States Trustee
Region 4

Date: May 7, 2026

By: /s/ Katharine I. Toledo
Katharine I. Toledo
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2026, a true copy of the foregoing was served via electronic mail pursuant to the Administrative Procedures of the CM/ECF System for the United States Bankruptcy Court for the Eastern District of Virginia to all parties registered for electronic notices, including, (i) Jennifer J. West, Trustee.  In addition, a copy was mailed to the following:

Towanda Lynette Tompkins
5024 Cedar Acres Ct
Richmond, VA 23223

/s/ Katharine I. Toledo
Katharine I. Toledo
Trial Attorney
Office of the United States Trustee
701 East Broad Street - Suite 4304
Richmond, VA 23219
Telephone (202) 603-5203

12